J-A27038-25                    2026 PA Super 11

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESSE RAYMOND KLING | : | |
| | : | No. 2855 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 30, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005253-2023

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

OPINION BY BECK, J.:                    **FILED JANUARY 16, 2026**

Jesse Raymond Kling ("Kling") appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas ("trial court") following convictions of, among other crimes, homicide by vehicle while driving under the influence ("DUI") and homicide by vehicle.[1]  He raises challenges to the sufficiency and weight of the evidence supporting those two verdicts.  After review, we affirm.

## Facts and Procedural History

The trial court opinion aptly summarized the underlying facts as follows:

On April 20, 2023, at approximately 4 p.m., [Kling] was traveling eastbound on High Street in Limerick Township when he encountered a red light at the intersection with Rupert Road. [Kling] was operating a motorcycle in which an individual named Brittany Langevin was riding as a passenger.  While stopped at the light, a blue Honda Accord operated by Kiersten Pennypacker

_____

[1]  75 Pa.C.S. §§ 3735(a)(1)(ii), 3732(a).

pulled up beside [Kling]'s motorcycle. [Kling]'s motorcycle was in the left lane and the Honda Accord was in the right lane. Upon the light turning green, both vehicles accelerated to an upcoming merge point where the two … travel lanes on High Street converge into one … lane on a ramp which feeds traffic onto Ridge Pike. Neither driver would relent in the attempt to reach the merge point first and the vehicles went back and forth in terms of which was ahead leading to the approach of the merge point. Eventually, the Honda Accord completely overtook [Kling]'s motorcycle and began to merge into the left lane at the merge point. [Kling] subsequently struck the back of the Honda Accord, which caused him to lose control of the motorcycle and slide across the roadway. []Langevin was thrown from the motorcycle and landed on the roadway.

Trial Court Opinion, 2/25/2025, at 1-2.

Multiple civilians and police officers responded within minutes. Officer Sergio Rodriguez observed Langevin on the ground, and it "was plainly obvious [she] had passed away." N.T., 2/27/2024, at 128. He heard voices from the nearby hillside, and saw Kling, who was speaking with another man. Officer Rodriguez observed injuries to Kling, but they "appeared to be surface level and he seemed … completely conscious." *Id.* at 130. Kling was bleeding and he repeatedly stated he was in pain. *Id.* at 134. Shortly thereafter, emergency personnel arrived and they tended to Kling, who was transported to the hospital.

Officer Kevin McGuigan, a police officer and member of the Montgomery County District Attorney's drug task force since 2007, arrived on scene after Officer Rodriguez. Officer McGuigan testified that he is "trained and certified

in ARIDE[2] which is DUI recognition, drugs." *Id.* at 199.  Shortly after his arrival, he saw Kling with "two civilian bystanders" and Officer Rodriguez. *Id.* at 202, 220.  Kling "seemed very dazed and lethargic" and in pain. *Id.* at 203.  Kling stated he did not know who owned the motorcycle and Officer McGuigan "observed that he had pinpoint pupils, ... [an] indicator of possible intoxication." *Id.*  He believed "there [was] a very good possibility he was under the influence." *Id.* at 204.  As emergency personnel tended to Kling, they cut off his sweatshirt and t-shirt and loaded him onto a stretcher.  Kling received 100 micrograms of fentanyl before transport.  N.T., 2/28/2024, at 199.  Officer McGuigan then recovered from the sweatshirt suspected drugs and "a clear plastic bag" with an "unknown blue-type pill in it[.]"  N.T., 2/27/2024, at 204.  The parties stipulated that these items tested "positive for methamphetamine, fentanyl and heroin, and clonazepam." *Id.* at 210.

At the hospital, Kling received another 100 microgram dose of fentanyl. N.T., 2/28/2024, at 199.  Shortly thereafter, he agreed to provide a blood sample.  The Commonwealth called Jolene Bierly ("Bierly") as an expert in the field of forensic toxicology, and she testified that, in addition to fentanyl and its metabolites, in Kling's blood she detected "amphetamine at a concentration of 87 plus or minus 27 nanograms per milliliter; [and] methamphetamine at 940 plus or minus 290 nanograms per milliliter[.]" *Id.* at 38.

---

2  ARIDE stands for "advanced roadside impaired driver enforcement."  N.T., 2/28/2024, at 88.

- 3 -

Dennis DeWane ("DeWane") testified as an expert in the field of mechanical failures and inspection. *See id.* at 161. He performed an inspection of the two vehicles involved in the crash. He observed minimal damage to Pennypacker's Honda, but "the left rear taillight lens was broken" and "obviously damaged" from the accident. *Id.* at 171. He also observed a "puncture wound" in the bumper. *Id.* He did not find any mechanical issues with the car. *Id.* at 174.

DeWane also examined Kling's Harley-Davidson motorcycle, which "was not catastrophically damaged." *Id.* at 175. He observed "what … you would call road rash" on the motorcycle's side caused by the motorcycle sliding on the road. *Id.* DeWane testified that the motorcycle's front brake is located on the right side of the handlebar. *Id.* He determined that the "puncture wound in the bank of the Honda was done by the right brake handle, and it broke that handle off" during impact. *Id.* DeWane opined that "there w[ere] no mechanical problems or failures that contributed to the crash." *Id.* at 185.

Sergeant Matthew Daywalt testified as an expert in the field of crash reconstruction and crime scene investigation. The trial court summarized his testimony as follows:

> [Sergeant Daywalt] indicated that the conditions on the day of the accident were partly cloudy and dry with 75[-]degree temperatures and light wind. The sergeant also noted that the road was dry and in good condition with no observed potholes.
>
> Sergeant Daywalt obtained []Pennypacker's cell phone and determined that it was not in use at the time she was driving. Sergeant Daywalt's investigation of [Kling]'s driver's license

status revealed that his license was suspended and he also did not have the appropriate license for a motorcycle. The investigation further revealed that [Kling]'s motorcycle was not registered and possessed a "dead tag." [Kling] was also only permitted to operate vehicles which possessed an ignition interlock device due to a prior DUI conviction, but [Kling]'s motorcycle contained no such device and the sergeant indicated motorcycles are not able to be equipped with such a device.

Sergeant Daywalt's examination of the vehicles and crash scene revealed that at the point of collision, the motorcycle's brake handle went into the trunk lid of the Honda Accord. The force of this collision caused the motorcycle to become impaled in the Honda's bumper, which allowed for the Honda to pull the motorcycle for a brief period. The motorcycle's brake handle eventually failed, at which time the motorcycle hit the ground and slid on the roadway until it came to an uncontrolled rest. An inspection of the left-hand side of the Honda Accord revealed that no materials, such as paint, had been transferred from the motorcycle to the Honda. The sergeant stated that this served to demonstrate that there was no side swipe in which the Honda Accord drove into the motorcycle's path. A review of surveillance footage from businesses in the vicinity of the accident scene demonstrated that the motorcycle was never ahead of the Honda Accord immediately prior to their arrival at the merge point.

Based upon all of these factors, in addition to eyewitness statements and the toxicology report, Sergeant Daywalt concluded with reasonable scientific certainty that [Kling] and []Pennypacker acted in a reckless or grossly negligent manner by participating in an attempt to outgain or outdistance each other for the quarter mile distance from the Rupert Street intersection to the accident site. The sergeant was able to eliminate roadway condition, weather or mechanical failure as a cause of the accident and concluded that the crash was caused by the combined actions of [Kling] and []Pennypacker.

Trial Court Opinion, 2/25/2025, at 4-5.

The Commonwealth also called Pennypacker, who had tendered an admission to DUI and homicide by vehicle in juvenile court. She testified that "around the first turn" she got in front of Kling's motorcycle and observed him

- 5 -

in "the side mirrors." N.T., 2/28/2024, at 13. As she approached the merge, she "sped up in order to not hit [his] tire, and … merged over." *Id.* She checked her side mirror and saw that she had "enough [room] for me to merge over." *Id.* After completing the merge, she "felt like a pothole" and looked in the rearview mirror and "saw both of them up off the motorcycle." *Id.*

The jury convicted Kling of two counts of DUI under 75 Pa.C.S. § 3802(d)(1)(ii) and (iii), homicide by vehicle while DUI, homicide by vehicle, accidents involving death or injury while not licensed, illegally operating a vehicle not equipped with an ignition interlock device, possession of drug paraphernalia, and two counts of possession of a controlled substance. It acquitted him of DUI under 75 Pa.C.S. § 3802(d)(2)(i). The trial court found Kling guilty of five summary violations of the Motor Vehicle Code and sentenced him to an aggregate term of nine to twenty years of incarceration.

Kling filed a timely post-sentence motion and a timely notice of appeal from the trial court's order denying relief. Kling complied with the trial court's order to file a concise statement of errors under Pa.R.A.P. 1925(b) and the trial court issued its responsive opinion. Kling raises five claims, which we have reordered for ease of disposition:

> 1. Must [Kling]'s conviction [of] [h]omicide by [v]ehicle [w]hile DUI be vacated in light of the jury's acquittal at [c]ount [eight]: DUI [c]ontrolled [s]ubstance – [i]ncapable of [s]afe [d]riving since the acquittal at [c]ount [eight] precluded a finding that [Kling]'s alleged intoxication was a direct and substantial cause of the accident in question?

2. Was the evidence insufficient to support [Kling]'s conviction at [c]ount [one]: [h]omicide by [v]ehicle [w]hile DUI since the evidence, (1) failed to establish beyond a reasonable doubt that [Kling] was, in fact, impaired at the time of accident and (2) failed to establish that the presence of controlled substances in [Kling]'s blood was a direct and substantial cause of the accident in question?

3. The evidence was insufficient to support [Kling]'s conviction at [c]ount [two]: [h]omicide by [v]ehicle since the evidence, (1) failed to establish beyond a reasonable doubt that [Kling] engaged in reckless behavior or grossly negligent behavior and (2) failed to establish that any reckless or grossly negligent behavior was a direct and substantial cause of the accident in question[.]

4. Is [Kling] entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground that the jury's verdict of guilty with respect to ... [h]omicide by [v]ehicle [w]hile DUI was against the weight of the evidence since the evidence, (1) failed to establish beyond a reasonable doubt that [Kling] was, in fact, impaired at the time of accident and (2) failed for establish that the presence of controlled substances in [Kling]'s blood was a direct and substantial cause of the accident in question?

5. Is [Kling] entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground that the jury's verdict of guilty with respect to ... [h]omicide by [v]ehicle was against the weight of the evidence since the evidence, (1) failed to establish beyond a reasonable doubt that [Kling] engaged in reckless behavior or grossly negligent behavior and (2) failed to establish that any reckless or grossly negligent behavior was a direct and substantial cause of the accident in question?

Kling's Brief at 3-4 (reordered).

**Sufficiency of the Evidence**

The first three issues concern the sufficiency of evidence to support Kling's conviction of homicide by vehicle while DUI. The following principles guide our review:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness'[] testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

Homicide by Vehicle while DUI – Predicate Offense

In his first issue, Kling argues that the jury acquitted him of the only DUI charge that could serve as the necessary predicate for homicide by vehicle while DUI. He therefore contends that the evidence was insufficient to convict him of that offense. ***See*** Kling's Brief at 39-44.[3]

---

[3] Our Supreme Court has followed the lead of the United States Supreme Court, which has "explicitly cautioned that sufficiency review 'should not be confused with the problems caused by inconsistent verdicts.'" ***Commonwealth v. Moore***, 103 A.3d 1240, 1242 (Pa. 2014) (citation omitted). However, where, as here, the argument is that an acquittal of one offense negates an element of another offense, the argument presents an "idiosyncratic sufficiency" challenge. ***Commonwealth v. Baker-Myers***, 255 A.3d 223, 235 (Pa. 2021) (citation omitted). For ease of reference, we refer to the argument as a sufficiency of evidence challenge.

A somewhat detailed discussion is necessary to supply context to Kling's fuller argument. The statutory text states: "A person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802[.]" 75 Pa.C.S. § 3735(a)(1). The Commonwealth therefore had to establish that Langevin's death was "the result of" a DUI violation, i.e., the DUI caused her death. *See id.* Additionally, the statutory language requires a conviction of a DUI offense. *See Commonwealth v. Caine*, 683 A.2d 890, 893 (Pa. Super. 1996) (en banc) ("a conviction of homicide by vehicle while driving under the influence requires a formal conviction for driving while under the influence").

"In order to impose criminal liability, causation must be direct and substantial." *Commonwealth v. Rementer*, 598 A.2d 1300, 1304–05 (Pa. Super. 1991). Furthermore, "criminal causation has come to involve a case-by-case social determination; i.e., is it just or fair under the facts of the case to expose the defendant to criminal sanctions." *Id.* We must therefore determine whether "the defendant's conduct [was] so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability[.]" *Id.* This ensures that "the actual result" was not "so remote and attenuated that it would be unfair to hold the defendant responsible" for his conduct. *Id.* at 1307. "So long as a defendant's actions are a direct and substantial factor in bringing about death, legal responsibility

may be found." ***Commonwealth v. Johnson***, 545 A.2d 349, 353 (Pa. Super.

1988) (quoting ***Commonwealth v. Matthews***, 389 A.2d 71, 73 (Pa. 1978)).

Here, the Commonwealth charged Kling with committing three DUI

offenses: two under 75 Pa.C.S. § 3802(d)(1)(ii) and (iii), the other under

section 3802(d)(2).[4]  The two charges differ in significant ways in terms of

what the Commonwealth must prove.  "Section 3802(d)(1)(i) rests not on an

irrebuttable presumption of impaired driving but, instead, on a per se

proscription against driving while there is present in one's blood a Schedule I

controlled substance or a metabolite thereof." ***Commonwealth v. Smith***,

320 A.3d 674, 690–91 (Pa. Super. 2024).[5]  Conversely, a conviction under

_____

[4]  The pertinent provisions state:

> **(d) Controlled substances.--**An individual may not drive,
> operate or be in actual physical control of the movement of a
> vehicle under any of the following circumstances:
> (1) There is in the individual's blood any amount of a:
>
> (ii) Schedule II or Schedule III controlled substance, as defined in
> The Controlled Substance, Drug, Device and Cosmetic Act, which
> has not been medically prescribed for the individual; or
>
> (iii) metabolite of a substance under subparagraph (i) or (ii).
>
> \*     \*     \*
> (2) The individual is under the influence of a drug or combination
> of drugs to a degree which impairs the individual's ability to safely
> drive, operate or be in actual physical control of the movement of
> the vehicle.

75 Pa.C.S. § 3802(d)(1)(ii-iii), (2).

[5]  The same applies to violations under (ii) and (iii).

section 3802(d)(2) requires proof of impairment. *Id.* at 691 ("[T]he DUI statutory scheme has a separate subsection, [s]ubsection 3802(d)(2), attaching criminal liability based specifically on evidence of impairment.").

In his argument on appeal, Kling claims that the jury's acquittal at 75 Pa.C.S. § 3802(d)(2) renders the evidence for homicide by vehicle while DUI insufficient. Kling's Brief at 36-46. Kling argues that the statute requires proof that "the defendant [wa]s impaired to such a degree that the impairment is the direct cause of the victim's death." *Id.* at 43. Kling reasons that the acquittal for that charge establishes that he was not impaired at the time of the accident and, as such, the Commonwealth cannot establish that his intoxication caused Langevin's death as required for a conviction under section 3735(a)(1). *Id.* Kling agrees that acquittals generally cannot be interpreted to represent a specific factual determination by the jury. *Id.* According to Kling, the acquittal here must be afforded special weight because that DUI offense "is charged as a separate offense and is also an element of a greater offense." *Id.* at 39. In his view, because homicide by vehicle while DUI requires that the death be a "result of" a DUI violation, and he must be convicted of a DUI offense, the acquittal of the offense requiring impairment means that the evidence was insufficient as to the causation element. *Id.* at 45 ("[A] conviction under subsection 3802(d)(1) cannot satisfy the causal link between a defendant's impairment and the victim's death that 75 Pa.C.S. § 3735 requires.").

In support of his position, Kling relies upon **Commonwealth v. Magliocco**. **Id.** at 39 (citing **Commonwealth v. Magliocco**, 883 A.2d 479, 492 (Pa. 2005)).  In **Magliocco**, the Commonwealth charged the defendant with, inter alia, terroristic threats and ethnic intimidation.  For the latter crime, the statute required the Commonwealth to prove that the actor "commit[ted] an offense under any other provision of this article[.]"  18 Pa.C.S. § 2710(a).  The "only potentially applicable predicate offense at issue in th[e] case was [t]erroristic [t]hreats," and the trial judge "acquitted Magliocco of that offense[.]"  **Magliocco**, 883 A.2d at 489.  Our Supreme Court concluded that this acquittal precluded a conviction for ethnic intimidation.  **Id.** at 493.

Kling contends that **Magliocco** dictates that his acquittal of DUI under section 3802(d)(2) necessitates a finding that the Commonwealth failed to establish impairment.  Kling's Brief at 45.  Although Kling recognizes that inconsistent verdicts are permissible in Pennsylvania, "an inconsistent verdict is not permitted when an acquittal concerns an offense that is an element of the greater offense."  **Id.**

We disagree.  Kling's argument rests on the notion that a conviction for a **specific** DUI violation is an element of the homicide by vehicle while DUI offense.  The statute does require a conviction for a section 3802 violation, and, as this Court held in **Caine**, if the offender is not convicted of any such offense then a homicide by vehicle while DUI conviction cannot stand as a matter of law.  But the statute only requires the Commonwealth to prove "a"

violation of section 3802 and that the defendant be convicted of "violating section 3802." The statute does not require that the Commonwealth charge a DUI offense that includes impairment as an element.

Kling's argument attempts to evade this point by assuming that section 3802(d)(1) cannot meet the statutory criteria because that offense does not require proof of impairment. By its terms, however, the statute does not limit in any way which 3802 offenses qualify. Applying the plain, clear, and unambiguous language of section 3735 (as we must),[6] the statute is violated if a death is the "result of" any violation of section 3802, provided that the evidence establishes all elements of the offense.

We agree that the section 3802 verdicts in this case appear to be inconsistent with the homicide by vehicle while DUI charge, as the only substantive difference between the (d)(1) and (d)(2) violations is proof of impairment. But cases like *Magliocco* and its progeny make clear that it is the fact of acquittal, not factual inferences drawn from those acquittals, that we must consider. *See Baker-Myers*, 255 A.3d at 235 ("And, as demonstrated, it is 'the fact of the jury's acquittal — not any factual inference drawn from the acquittal — and the statutory elements' of the offense that drive this conclusion.") (quoting *Magliocco*, 103 A.3d at 1248). It may be

---

[6] Absent an ambiguity, courts must adhere to and apply the plain language of a statute and are not permitted to disregard "the letter of it … under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

that the jury returned a guilty verdict under section 3802(d)(1) but not 3802(d)(2) is because it found that the Commonwealth failed to show that Kling was impaired by the controlled substances in his blood. But it could also be that the jury simply chose to be lenient. We do not know the reason, and "[t]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." **Commonwealth. v. Miller**, 657 A.2d 946, 948 (Pa. Super. 1995) (citations omitted). Because Kling's argument requires us to draw a factual inference based on the acquittal, his first claim warrants no relief.

In reaching this conclusion, we also take into account the relevant jury instruction issued in this case:

> The defendant is charged with homicide by vehicle while driving under the influence. To find the defendant guilty of this offense, you must first find beyond a reasonable doubt the defendant violated one of the provisions of the vehicle code involving the crime of driving under the influence.

> I have previously defined those provisions for you. If you find the defendant is guilty of driving under the influence, in order to convict the defendant of homicide by vehicle while driving under the influence, you must find that the Commonwealth has proven each of the following additional elements beyond a reasonable doubt:

> \* \* \*

> Third, that the defendant caused the death of Brittany Langevin as a result of his driving under the influence. In order to be a direct cause of the death, a person's conduct must be a direct and substantial factor in bringing it about.

- 14 -

N.T., 2/29/2024, at 55-56.

Because the jury was told that any of the DUI charges submitted would qualify, the fact of acquittal cannot be said to be the equivalent of a finding on an element of the crime. Kling's first issue therefore does not warrant relief.

### Homicide by Vehicle while DUI – Causation

Turning to Kling's second issue, he challenges the sufficiency of the evidence to establish all elements of the homicide by vehicle while DUI charge. He raises two arguments. First, Kling asserts that the Commonwealth failed to prove the substances in his blood impaired him in any way because the Commonwealth's expert did not so testify. Kling's Brief at 22. He observes that Bierly testified that she could not rule out that the fentanyl detected in Kling's blood was not from doses of fentanyl administered to treat his pain. *Id.* Regarding the methamphetamine present in his blood, Bierly "opined that, without knowing [Kling]'s use pattern, she was unable to determine whether the methamphetamine in defendant's blood was consistent with recent use." *Id.* Kling therefore wholly discounts any reliance on Bierly's testimony and maintains that the only evidence of impairment came from Officer McGuigan's testimony that Kling appeared to be under the influence. *Id.* at 23. In his view, this testimony was insufficient to establish impairment, citing case law in which similar observations were deemed insufficient. *Id.* at 23-25.

Second, Kling argues that even if the Commonwealth established sufficient evidence of impairment, that evidence cannot establish causation. *Id.* at 26-30. Kling notes that the Commonwealth's theory of the case was that the crash was caused by Kling and Pennypacker aggressively racing to the merge point. *Id.* at 28. Kling argues that the evidence cannot serve to establish that the drugs in his system explained that behavior, as "the notion that an individual will never drive aggressively unless they are under the influence of methamphetamine flies in the face of common sense and the caselaw of this Commonwealth." *Id.* Kling cites several cases involving sober drivers acting more aggressively and dangerously than he did leading up to the accident. *Id.* at 28-29. According to Kling, these cases "clearly demonstrate that even a sober motorist may refuse to yield to another vehicle as they approach a merge point." *Id.* at 29.

*Kling was Impaired*

Beginning with impairment, we agree that Bierly's testimony regarding the fentanyl in Kling's blood is too speculative to support a finding that he was impaired by fentanyl. She admitted on cross-examination that her calculations did not account for the dose of fentanyl given to Kling at the hospital, which "would mean that the concentration of fentanyl here may have been from the hospital administration completely." N.T., 2/28/2024, at 68. *See also* Commonwealth's Brief at 26 n.4 (agreeing that Bierly "acknowledged it was possible that the fentanyl in [Kling]'s blood was entirely

medical"). Regardless, the evidence of methamphetamine in Kling's blood sufficiently established impairment. Bierly testified that she detected "amphetamine at a concentration of 87 plus or minus 27 nanograms per milliliter; [and] methamphetamine at 940 plus or minus 290 nanograms per milliliter[.]" N.T., 2/28/2024, at 38. Bierly explained that the reporting threshold for methamphetamine is five nanograms per milliliter. *Id.* at 42. She stated that the drug is "rare[ly]" used for therapeutic reasons such as "attention deficit, narcolepsy, or even obesity," but where so used, Bierly would "expect to see … 200 nanograms per milliliter, and that would be someone that's prescribed approximately 60 milligrams per day." *Id.* at 43.

Bierly could not "really speak to recency of use" because she did not know Kling's "use pattern[.]" *Id.* at 44. Methamphetamine "can stay in the blood for more than a day from a single use" if used chronically or "multiple times throughout the day every few hours" and "will accumulate" in the blood. *Id.* As such, Bierly agreed that she could not specifically say whether the concentration of methamphetamine in Kling's blood rendered him impaired at the time of the accident. *See id.* at 57 ("[I]f [Kling] was not tolerant to these concentrations ... he may have been impaired, but without being able to show active drug effects at the scene and relate the driving to those active effects, I am not able to attribute all of that behavior to the drugs specifically.").

Bierly's candid testimony regarding her inability to determine if Kling was impaired at the time of the accident implicates the principle that the

"Commonwealth need not preclude every possibility of innocence." ***Scott***, 325 A.3d at 849. There was no plausible way for Bierly to know Kling's tolerance levels. The jury was entitled to draw the inference that the level of methamphetamine in Kling's blood actively impaired him given the other circumstantial evidence corroborating that conclusion. Specifically, police found drugs and drug paraphernalia at the scene and on Kling's person, thus suggesting recent usage. ***See Commonwealth v. Jeter***, 937 A.2d 466, 468 (Pa. Super. 2007) (stating that discovery of "half-empty bottle of liquor on the front passenger-side floor of Jeter's vehicle ... indicat[ed] that he may have been drinking alcohol while, or immediately prior to, driving"). Additionally, Officer McGuigan testified that he was qualified as a drug recognition expert and that Kling displayed signs, including pinpoint pupils, that led him to conclude "there's a very good possibility he was under the influence." N.T., 2/27/2024, at 204.

In ***Jackson v. Virginia***, 443 U.S. 307 (1979), the United States Supreme Court held that the Due Process Clause as incorporated by the Fourteenth Amendment requires that all convictions be supported by "sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." ***Id.*** at 316. We follow the ***Jackson*** approach. ***See Commonwealth v. Brown***, 52 A.3d 1139 (Pa. 2012). The High Court has stated that in a challenge to the sufficiency of the evidence, "the only question under ***Jackson***

- 18 -

is whether [a] finding was so insupportable as to fall below the threshold of bare rationality." **Coleman v. Johnson**, 566 U.S. 650, 656 (2012). The evidence here does not fall below that threshold.

*Kling's Impairment Caused Langevin's Death*

As the Commonwealth sufficiently established that Kling was impaired, we conclude for substantially similar reasons that the evidence established that Langevin's death was caused by this impairment. Bierly testified to the effects of methamphetamine use, explaining that high doses, as were present here, "make it harder to focus" and can cause "aggressive, impulsive, angry, [and] combative" behaviors, among others during the stimulation phase. N.T., 2/28/2024, at 46. For someone driving under the influence of high doses of methamphetamine, this includes "aggressive driving, speeding, weaving, [and] unsafe lane changes." *Id.*

Additionally, the expert testimony of Sergeant Daywalt was that both Pennypacker and Kling "engaged in a reckless or grossly negligent manner by participating in an attempt to outgain or outdistance each other in more than a quarter mile distance from the stoplight to where impact occurred." N.T., 2/28/2024, at 162. He opined that "[t]heir driving was more dangerous based upon what was found in their blood, their impairment, and that this behavior ended up resulting in the death of another person." *Id.*

Kling argues that this case is similar to **Commonwealth v. Lenhart**. Kling's Brief at 26 (citing **Commonwealth v. Lenhart**, 553 A.2d 909 (Pa.

1989)). In **Lenhart**, the defendant collided head-on with another vehicle at 2:00 a.m., killing the other driver. **Lenhart**, 553 A.2d at 910. Lenhart was injured and transported to the hospital, where his blood was drawn and tested. **Id.** His blood alcohol content was 0.21%; the victim's blood contained no alcohol. **Id.** No one witnessed the crash, "and the Commonwealth produced no evidence from an accident reconstruction expert, nor, indeed, from any expert witness whatever." **Id.** Lenhart opted for a bench trial and the trial court, while opining that it was "a very weak case," **id.** at 911 (quoting transcript), concluded that Lenhart was guilty of homicide by vehicle while DUI because there was "no other reasonable explanation for this tragic accident." **Id.** (quoting trial court opinion). On appeal, our Supreme Court concluded that the evidence could not establish causation:

> It is not enough to conclude that [Lenhart]'s intoxication was *the most likely cause* of the accident and death; causation must be established *beyond a reasonable doubt* in order to sustain the conviction. It is, of course, a reasonable possibility that an absolutely sober motorist might doze off at 2:00 a.m., lose control of his car, and cause an accident. The scanty evidence of record in this case simply fails to prove that [Lenhart] caused the accident.

**Id.** at 912. The Court thus vacated Lenhart's conviction of homicide by vehicle while DUI.

Kling submits that it is reasonably possible "that even a sober motorist may refuse to yield to another vehicle as they approach a merge point." Kling's Brief at 29. Even if this Court concluded that impairment was "the

most likely cause" of his aggressive driving, Kling contends it remains insufficient under *Lenhart*.

*Lenhart* is distinguishable. It is, of course, possible that a sober driver could race aggressively, just as it is possible a sober driver could fall asleep while driving at 2:00 a.m. and lose control. Unlike in *Lenhart*, however, the Commonwealth here provided testimony and evidence to establish the events leading up to the accident and how the accident occurred, as eyewitnesses, including Pennypacker, and video surveillance established that Kling and Pennypacker jointly participated in a deadly race and jockeyed for position as they converged on a merge point. This, combined with the evidence discussed hereinabove as to Kling's impairment while driving, sufficiently establishes that the accident—and Langevin's death—was caused by his DUI.

### Homicide by Vehicle

Kling's third claim challenges the sufficiency of the evidence supporting his conviction of homicide by vehicle.

> This offense … has three elements: 1) that the defendant violated a statute or ordinance relating to operation or use of a vehicle or regulation of traffic other than the driving under the influence statute; 2) that the violation caused the death of another person; and 3) that the defendant's conduct was reckless or grossly negligent.

*Commonwealth v. Fretts*, 271 A.3d 383, 389 (Pa. Super. 2021) (citations omitted).

Kling's sufficiency argument is limited to the third element.[7] He stresses that his multiple violations of the Motor Vehicle Code do not constitute recklessness per se. Kling's Brief at 32. He cites appellate decisions from our courts deeming violations of the Motor Vehicle Code as not rising to the level of recklessness, arguing that, as in those cases, Kling's "actions simply do not meet this standard." *Id.* at 35. He argues that the race with Pennypacker was short in duration and asserts that he could not "have foreseen that Pennypacker would illegally fail to yield the right of way and merge to the left, which she admitted was the action that caused the crash in question." *Id.* (citing N.T., 2/28/2024, at 10-11). He argues that he "did not have a sustained period to appreciate the danger created by his attempts to outgain Pennypacker." *Id.*

The Crimes Code defines the circumstances under which a person acts recklessly.

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

_____

[7] While Kling's question as presented references causation, his brief does not discuss that element.

The "conscious disregard" of a risk requires knowledge of the risk on the actor's part, and thus the Commonwealth must show that Kling was "aware of the risk and then cho[se] to proceed in spite of the risk." ***Commonwealth v. Sanders***, 259 A.3d 524, 532 (Pa. Super. 2021) (en banc) (citation omitted). "In other words, to be guilty of reckless driving, a person must be aware that there exists a substantial risk that injury will result from his driving and yet continue to drive in such a manner, thus callously disregarding the risk created by his own reckless driving." ***Id.*** at 532.

Kling is correct that the multiple violations of the Motor Vehicle Code do not satisfy the Commonwealth's burden as a per se matter. "[T]he assertion that a motor vehicle code violation, without more, is a form of 'recklessness per se' is contrary to case law." ***Commonwealth v. Karner***, 193 A.3d 986, 993 (Pa. Super. 2018). Nor does the finding that he was intoxicated, standing alone, establish recklessness. ***See Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995).

In ***Commonwealth v. Jeter***, we concluded that the Commonwealth presented sufficient evidence to establish the offense of reckless driving. Jeter argued that "he was merely a 'garden-variety drunk driver' whose driving did not rise to the level of recklessness." ***Jeter***, 937 A.2d at 468. We disagreed:

> It is true that evidence of intoxication alone is insufficient to support a reckless driving conviction. Here, however, there were other tangible indicia of unsafe driving, evidencing Jeter's conscious disregard of the substantial risk of harm to others on the roadway. First, Jeter was driving his vehicle on the Pennsylvania Turnpike, so presumably he was traveling at an

increased speed, which could have resulted in substantial harm to others if an accident had occurred. Second, eyewitness Gerald Zufuria, whose testimony was placed on the record by stipulation, testified that Jeter's vehicle was weaving in and out of the roadway for several miles before it lost control and crashed into the center barrier. Third, Trooper Kosh testified that Jeter's blood alcohol level (BAC) was 0.21 within two hours of his operation of the vehicle, which is almost three times the legal limit. Finally, Trooper Kosh found a half-empty bottle of liquor on the front passenger-side floor of Jeter's vehicle, indicating that he may have been drinking alcohol while, or immediately prior to, driving.

*Id.* (citations omitted).

Similarly, "other tangible indicia of unsafe driving" in addition to his intoxication establishes that Kling consciously disregarded a substantial risk of harm to Langevin. The Commonwealth established that Kling engaged in a race to the merge point, over a distance of approximately a quarter mile, with the vehicles exceeding the posted speed limit. *See* N.T., 2/29/2024, at 246-47 (defense expert testifying that both vehicles "accelerated rapidly up to a speed of approximately [fifty-six] miles per hour when they entered the ramp. The speed limit at the time posted on the ramp is [forty] miles per hour."). Kling knew a merge point was approaching since road signs alerted drivers of that fact. *See* N.T., 2/28/2024, at 22 (Pennypacker agreeing that "there are several signs on the road indicating that at the end of the road [there is] a merge"). Instead of simply conceding the race and slowing down to allow Pennypacker to merge, Kling continued to jockey with Pennypacker for position.

Additionally, Kling was operating an unregistered motorcycle and was not licensed to operate a motorcycle. *Id.* at 162. And he had a passenger riding with him on the motorcycle who was not wearing a helmet. N.T., 2/27/2024, at 91.

Lastly, the Commonwealth presented expert testimony from Sergeant Daywalt, who reviewed surveillance videos, reconstructed the accident scene, and opined that both drivers acted recklessly. N.T., 2/28/2024, at 162.

These facts, taken together, demonstrate a conscious disregard of a substantial risk that a collision would occur, especially as surveillance showed that Pennypacker overtook Kling as the vehicles approached the final merge point, and he failed to concede. That Pennypacker would merge into Kling's lane was not only foreseeable, it was inevitable.

Kling argues that our decision in ***Commonwealth v. Greer*** "addressed a scenario nearly identical to the instant case." Kling's Brief at 33 (citing ***Commonwealth v. Greer***, 335 A.2d 770 (Pa. Super. 1975)). There, Greer was stopped at a red light on a four-lane road with two lanes in each direction. ***Greer***, 335 A.2d at 771. When the light turned green, Greer, in the right lane, accelerated towards a bridge where the road narrowed to one lane in each direction. *Id.* at 771. According to a passenger in Greer's car, a vehicle in the left lane refused to let Greer pass. Greer increased his speed "and pulled past the other driver about a half block" before the merge point. *Id.* A "witness stated that the other driver's bumper swerved into [Greer]'s lane

as [Greer] was passing." *Id.* Greer then "swerv[ed] on the wet surface and apparently lost control as he came onto the bridge." *Id.* The subsequent crash ejected Greer's passenger from the vehicle and killed him. *Id.*

The trial court sustained a demurrer and the Commonwealth appealed. We affirmed, holding that the evidence failed to establish recklessness as a matter of law. "While it cannot be maintained that [Greer] acted with caution prior to the accident, the Commonwealth's proof could not support a finding of disregard for human life or indifference to consequences." *Id.* at 772.

We do not agree that *Greer* presents "nearly identical" facts. The two cases are alike in that both involve drivers approaching a merge point. The similarities end there for the reasons already discussed. Furthermore, Kling was operating a motorcycle without a license and was intoxicated, whereas none of those facts was at issue in *Greer*.

## Weight of the Evidence

Kling's remaining two claims both challenge the weight of the evidence supporting his convictions, with the fourth addressing homicide by vehicle while DUI and the fifth challenging homicide by vehicle. We review a weight claim mindful of the following:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the

- 26 -

evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague [,] and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

On appeal, our "review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim," and we do not "consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Dortch*, 343 A.3d 298, 306 (Pa. Super. 2025) (citation omitted).

Kling bases his weight claims upon Bierly's testimony "that without knowing [Kling]'s use pattern, she was unable to determine whether the methamphetamine in defendant's blood was consistent with recent use," and her inability to conclusively link Kling's behavior to drug use. Kling's Brief at 48-49. He further assails Bierly's testimony regarding his fentanyl use, emphasizing that the record establishes Kling received two doses of fentanyl by the medics and hospital personnel, respectively. *Id.* at 49. He argues that the verdict is valid "only if the factfinder jettisons Bierly's expert testimony and, likewise, disregards the testimony of the EMT and hospital staff that treated [Kling]." *Id.* at 50. According to Kling, to "disregard[] such scientific evidence as well as the testimony of unbiased medical staff simply shocks the

conscious [sic]." ***Id.*** at 51. He cites ***In re J.B.***, 69 A.3d 268 (Pa. Super. 2013), *vacated*, 106 A.3d 76 (Pa. 2014), and ***Commonwealth v. Karkaria***, 625 A.2d 1167 (Pa. 1993), in support. Kling's Brief at 50.

In ***In re J.B.***, the juvenile court adjudicated J.B. delinquent for shooting and killing K.M.H., who was engaged to J.B.'s father, when J.B. was eleven years old. We concluded that the juvenile court's decision was contrary to the weight of the evidence presented, as the basis for the juvenile court's decision—that J.B., K.M.H., and his two younger step-sisters "were the only people inside the residence on the morning of February 20, 2009," and "that no other person entered the residence after the departure of J.B. and his seven-year-old sister and prior to the arrival of the Pennsylvania State Police"—was unsupported by the record. ***Id.*** at 278-80.

In ***Karkaria***, our Supreme Court found a criminal conviction was contrary to the weight of the evidence because "the record is riddled with critical inconsistencies." ***Karkaria***, 625 A.2d at 1171. After reviewing the testimony presented in support of the defendant's guilt, the Court concluded that the evidence was "so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." ***Id.*** at 1172.

Kling's reliance upon ***J.B.*** and ***Karkaria*** is inapt. The former decision granted relief on a weight-of-the-evidence claim based on inadequate record support for the juvenile court's conclusions. There is no comparable lack of

evidentiary support in this case. As our discussion of Kling's challenges to the sufficiency of the evidence makes clear, this is not a case where the record contains no support for the facts and inferences that support his guilt.

Kling's citation to **Karkaria** is even further afield. The **Karkaria** Court expressly considered "the evidence presented at trial … in its entirety," to conclude that it was "so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." **Karkaria**, 625 A.2d at 1172. Again, as our review of Kling's prior issues makes plain, that simply is not the case here.

Nothing in Kling's brief discusses the trial court's ruling on his weight claims or explains how the court abused its discretion.

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

**Commonwealth v. Gibbs**, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

In ruling upon Kling's challenges to the weight of the evidence, the trial court found that "the evidence demonstrated [Kling] was impaired and this impairment was a direct and substantial cause of ... Langevin's death," and that he "recklessly caused ... Langevin's death while engaged in violation of the racing on highways law and this violation was a direct and substantial cause of ... Langevin's death." Trial Court Opinion, 2/25/2025, at 22. The

court noted that Kling failed to "raise any specific factors with respect to his weight claim, but to the extent he may attempt to raise specific instances of conflicts in testimony involving certain witnesses, these are simply items which the jury chose not to assign significant (if any) weight." *Id.* The court opined that the verdict "was not so contrary to the weight of the evidence such that it shocks one's sense of justice." *Id.* at 23.

As discussed above, there was ample circumstantial and direct evidence supporting Kling's convictions of both homicide by vehicle while DUI and homicide by vehicle. We find no abuse of discretion in the trial court's determination. We therefore find that no relief on either of his final issues is due.

### Conclusion

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/16/2026